Tucker, P.
I am of opinion that the injunction in this case should have been dissolved and the bill dismissed.
The transaction is simply this. Jones, a debtor, possessing a slave incumbered to more than his value, and no doubt desirous, by private sale, to get as much as possible for him in order to extinguish so much of his debt, sells him to Hickman for 900 dollars, and gives him a bill of sale with warranty of title. Hickman, however, pays him not a cent, because the purchase money was to go of course to pay off the incumbrances : and inasmuch as Hickman could not take off the slave without discharging them, it was necessary to make an arrangement with the creditors, which was done cotemporaneously. Indeed, from the fact that Hickman required an extension of the credit from June till September, it seems probable that this credit was agreed upon beforehand, as one of the terms on which he was to make the purchase and become paymaster to the creditors. He accordingly pays off Wallis if Gibson, and gives his bond to Findlay if Mitchell payable in September. It turned out, however, that the negro was free,- and Hickman now contends that he should not pay off his bond, because the lien of Findlay if Mitchell was worth nothing. His counsel argues that the transaction was a purchase from them of their incumbrance, and that upon that purchase there was an implied warranty of its goodness.
The allegations of the plaintiff’s bill, the responsive statements in the answer, and the facts appearing in the cause, all contradict this position of the counsel. The plaintiff himself says, “ At the time of the purchase, it was agreed amongst the said creditors, Jones, and your orator, that if your orator would pay the debt to Wallis if Gibson, and execute his note to Findlay if Mitchell for the balance of the price of the negro, they the said creditors would release and surrender their liens *362 upon the negro.” Here then it appears that there was no sale of their lien, from which a warranty is supposed to have been implied, but a mere release, from which no warranty ever can be implied. If, on the one hand, a saje implies a right to sell, a release, on the other, implies nothing more than a surrender or quitclaim of that right which the party has or may have. And though a consideration be given for the release, and it eventually turn out that the right is good for nothing, yet if there be no fraud, there can be no reclamation.
The account of the transaction given in the answer corresponds with that extracted from the bill. The respondents, after stating that they paid Clarice's debt in order to extinguish his prior incumbrance, deny most explicitly a statement made in the bill, that the sale was a joint one by Jones and his creditors. They aver that the consideration of the bond was not a sale by them, but the release of their debt against Jones to that extent; that that release was absolute and unqualified; that it was a change of the debtor, for, upon receiving Hickman's bond, they gave Jones a credit on his note for the amount of that bond. All this is responsive to the matter of the bill, and, it seems to me, is conclusive of the question. Hickman, purchasing from Jones, becomes paymaster to the appellants and Wallis Sf Gibson, paying the latter in cash, giving his bond to the former for their debt, and thereby discharging the negro from the lien, and Jones from his responsibility; who, having parted absolutely with his property, had a right to a discharge, and was in fact discharged, pro tanto.
■All the circumstances in the case concur in sustaining this view of it. Jones, and Jones alone, makes the bill of sale, and he gives an express warranty. If the transaction was joint, then this express warranty by one of the three vendors is a negative of an implied warranty by the others. Again, Hickman, instead of *363 giving his bond to Jones, gives it to Findlay &f Mitchell. Why ? Because Jones having paid the debt by selling his property, it was unreasonable he should be longer bound, which he would have been, had the bond been given to and assigned by him. On the other hand, Findlay 8f Mitchell, in releasing their lien on the slave, preferred, I presume, the direct responsibility of Hickman, which bound him absolutely, to the indirect course of taking his bond by assignment from Jones, and thus leaving them exposed to possible equities between Hickman and Jones. This bond constituted a new contract, like the draft in Corbin’s adm'r v. Southgate, 3 Hen. & Munf. 319. It was a new contract between Findlay & Mitchell and Hickman, by which Hickman paid his own debt to Jones, and Jones”s debt to them. It was a contract, too, on valuable consideration, since, in consideration of it, they released a lien on property which was at that time regarded as liable, and also actually credited, or were at least bound to credit, Jones for the amount. And this was all fair. It was perfectly reasonable that they should be irresponsible for the title. For if a sale had been made under the deed of trust, and Hickman had purchased at that sale, they would not have been liable, though the mortgaged subject proved not to be chargeable, or turned out to be the property of a stranger. Petermans v. Laws, 6 Leigh 523.
Upon the whole, I am of opinion that there is error-in the decree, and that it should be reversed with costs, the injunction dissolved, and the bill dismissed with costs.